# In the United States Court of Federal Claims

No. 01-325C
(July 31, 2003)

* * * * * * * * * * * * * * * * * * * * * * * * *
**BANK ONE, MICHIGAN,**

*Plaintiff,*

v.

**THE UNITED STATES OF AMERICA,**

*Defendant.*
* * * * * * * * * * * * * * * * * * * * * * * * *

*Charles Milne*, Cox, Hodgman & Giarmarco, P.C., Troy, Michigan, for plaintiff.

*Carolyn J. Craig*, Commercial Litigation Branch, Civil Division, United States Department of Justice, for defendant. Of counsel were Paul Vitrano and Cpt. Daryl Witherspoon.

## OPINION AND ORDER

**Block, *Judge*.**

This case is an action by plaintiff to recover certain sums of money that defendant allegedly unlawfully exacted from the bank. Defendant claims these sums constitute a set-off of a debt owed by plaintiff. Defendant counterclaims for the remainder of the debt. The alleged debt is the result of certain checks the defendant contends were mistakenly proffered to the plaintiff. Plaintiff, in turn, maintains that the checks constitute an assignment of payments made by defendant to a contractor which, in turn, was alleged to be indebted to the bank. Before the court are cross-motions for summary judgment. Because the record is uncontroverted that the checks were mistakenly sent to plaintiff, the court grants defendant's motion, and, accordingly, denies plaintiff's motion.

## I. Facts

In 1996, The United States Army Tank and Automotive Command ("TACOM") entered into two contracts with Leisure Time Products, Inc., a Michigan corporation, for the purchase of Truck Troop Area Top Assemblies. Leisure Time executed an agreement with NBD bank (now known as Bank One, Michigan, "Bank One"), which granted Bank One a security interest in the payments due under the contracts to secure loans made by Bank One to Leisure Time. These payments were

assigned to Bank One under the Assignment of Claims Act of 1940.[1]

Leisure Time thereafter defaulted on its obligations under the contract. At that time, the United States, Leisure Time and John Johnson Company entered into a novation agreement, executed on May 13, 1999, whereby Johnson would assume the contractual obligations and liabilities of Leisure Time. Def.'s Mot. for Summ. J. app. at 19. After the novation, the United States was required to make all payments and reimbursements to John Johnson, Inc., rather than to Bank One for Leisure Time. On May 14, 1999, an amendment of solicitation/modification of contract and continuation sheet (Standard Forms 30 and 36) were signed by the administrative contracting officer, Roger L. Saad.[2] Def.'s Mot. for Summ. J. app. at 21-24; 72, ¶ 10. This amendment and modification of the contract documented the novation agreement and provided for the release of the assignment of claims to Bank One. *Id.* at 4. Attached to Standard Form 36 was a financing statement which specifically terminated the security interest in Leisure Time held by Bank One, and was signed by Susan C. Rumer, Banking Officer, NBD Bank. Pl.'s 56(h)(2) Resp. to Def.'s Proposed Findings of Uncontroverted Fact at 5, ¶ 16; Def.'s Mot. for Summ. J. App. at 24-26; 73, ¶ 17.

The Federal Acquisition Regulations ("FAR"), under which the Defense Finance Accounting Service ("DFAS") operates, required a separate "Release of Assignment" from Bank One in order for the system to recognize the novation agreement. Such a release was executed by Bank One, through its attorney, Charles Milne. *Id.* at 25-26, 73, ¶ 19. The release was also signed by Richard H. Darcy, Jr., Vice President of Johnson. *Id.* It contained language whereby Bank One acknowledged the previous release of its lien, and also states that "payments due or to become due under the contract should be made to Johnson." *Id.*

It is not clear from the record on what date the release of assignment was executed, but on March 10, 2000, the Defense Logistics Agency ("DLA"), DCMC–Detroit, sent an executed copy of the release to DFAS–Columbus ("DAFS–CO") for processing, and DFAS–CO acknowledged receipt of the release and so notified Bank One by a letter dated March 27, 2000. *Id.* at 27-30, 74, ¶ 22,23. When John Johnson, Inc. then performed the contract and issued invoices to the United States, the United States made payments totaling $93,277.50 to NBD Bank, intending to pay Johnson.[3] These checks were issued by DFAS on February 24, 2000 and March 3, 2000, *before* it received the executed Release of Assignment. *Id.* at 31-34, 74.

On August 11, 2000, DFAS–CO sent a demand letter to Bank One, which informed Bank One

---

[1] 31 U.S.C. 3727.

[2] These two documents are numbered A0004, and are also referred to in the parties' proposed findings of uncontroverted fact as "Standard Form 30" and "Standard Form 36". Def.'s Mot. for Summ. J. App. at 21-24, 71.

[3] The payments were made in the form of check number 00599655 for $47,345.00 and check number 00599540 for $45,952.50, and were issued for Johnson invoice no. 41294 (for check no. 6422-00,599,540) and Johnson invoice nos. 41340 and 41341 (for check no. 6422-00,599,655). Def.'s Mot. for Summ. J. App. at 31-34. This fact is stipulated by the parties. Pl.'s 56(h)(2) Resp. to Def.'s Proposed Findings of Uncontroverted Fact at 7, ¶ 24.

as follows:

> . . . that it was indebted to the United States in the amount of $93,297.50 on Contract No. DAAE07-96-CT352, Bill of Collection Number D0N081. The letter states that the debt is due to Leisure Time Products receiving and cashing check number 00599655 for $47,345.00 and check number 00599540 for $45,952.50.[4] The letter further states that those two checks belonged to Johnson and were sent to Bank One erroneously. The letter advises Bank One that if payment is not received within 30 days, interest will be assessed on any unpaid portion from the date of the letter at rates established by the U.S. Treasury pursuant to Public Law 92-41. The letter requests that Bank One immediately advise DFAS–CO in writing, if it believes the referenced debt to be invalid or the amount incorrect. The letter then provides an address for Bank One to send an explanation and supporting documentation for any disputed amounts. Lastly, the letter advises Bank One that the Government may exercise its right to take offset action at any time.

Pl.'s 56(h)(2) Resp. to Def.'s Proposed Findings of Uncontroverted Fact at 28, ¶ 28 (citations omitted). Second and third letters along those same lines were issued on October 5, 2000 and October 25, 2000. Bank One agrees that the letters were sent and that the statements in them were made, but "denies that they were either made lawfully or have any legal meaning."[5] *Id.*

DFAS then certified the debt, in the amount of $97,345.66, for transfer to the United States Department of the Treasury for collection by offset. "Administrative offset" is defined as "withholding funds payable by the United States (including funds payable by the United States on behalf of a State government) to, or held by the United States for, a person to satisfy a claim." 31 U.S.C. § 3701(a)(1). In essence, the government withholds payment of any debt it owes to a person or entity until the amount withheld satisfies the debt owed to the government. The government alleges that, as of February 12, 2003, "offsets in the total amount of $1,252 have been taken against Bank One by Treasury." Def.'s Corrected Proposed Findings of Uncontroverted Fact at 8, ¶ 37. Bank One does not coherently respond to this proposed finding of uncontroverted fact, and offers no contrary allegation of the amount of the offset.[6]

Bank One refuses to return the money to the United States, claiming that it is lawfully entitled to the money, citing a judgment against Leisure Time which established Bank One as a "lender to Leisure Time with a secured position."[7] Compl. at 1. Bank One contends that it is entitled to the

---

[4] "Bank One was the secured party for Leisure Time Products and it was Bank One that received and cashed the two above-referenced checks." *Id.* at 8, ¶ 28.

[5] The court notes that Bank One offers no basis or explanation for this assertion.

[6] Bank One's response to the proposed finding is that "Bank One, Michigan agrees that demands were made, but avers that its Brief set forth substantive reasons why it is not obligated to comply and restates its continuing objection." *Id* at 11, ¶ 37.

[7] Bank One's secured position in regards to Leisure Time is based on a judgment entered against Leisure Time in favor of Bank One in the Genessee County Circuit Court of the state of Michigan, in

offset, the amount of which is not specified by Bank One, but alleged to be in excess of $1000, and that, as a result, it is entitled to keep the money currently in its possession. The government puts the offset amount at $1,252, Def.'s Corrected Proposed Findings of Uncontroverted Fact at 11, ¶ 37, and in its counterclaim seeks judgment for $93,277.50, plus costs and interest as provided by law. Def.'s Corrected Answer and Countercl. at 9.

This case was originally filed May 30, 2001 as *John Johnson, Inc. v. United States* (under the same docket number as the current case), and was a contract action against the government, wherein John Johnson, Inc. sought payment on a contract. Bank One entered the lawsuit as a third-party defendant, brought in by the government pursuant to 41 U.S.C. § 114.[8]

On October 15, 2001, plaintiff John Johnson, Inc., moved for entry of voluntary dismissal of its claim against the United States,[9] pursuant to RCFC 41(a)(1), and, by the court's order of March 13, 2002, Johnson's motion was granted and the complaint dismissed without prejudice, pursuant to RCFC 41(a)(2). By that same order, the positions of the parties was adjusted and the pleadings redesignated such that third-party defendant Bank One became the plaintiff and its amended counterclaim filed January 11, 2002 was deemed to be its complaint. Cross-motions for summary judgment were subsequently filed by plaintiff and defendant, and oral argument was heard on July 14, 2003.

## II. Discussion

Under Rules of the Court of Federal Claims 56(c), summary judgment "shall be rendered forthwith if the pleadings, depositions, and answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247- 49, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986); *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed. Cir. 1987).

---

the amount of $204,410.20. Compl. Ex. B.

[8] 41 U.S.C. § 114 grants the Court of Federal Claims jurisdiction "over contingent claims asserted by the government against third parties 'for the recovery of money . . . paid by the United States in respect of the transaction or matter which constitutes the subject matter of such case.' This section provides for jurisdiction in situations where the government is seeking the recovery of a sum of money disbursed to the wrong party." *S. Cal. Edison Co. v. United States*, 226 F.3d 1349, 1355 (Fed. Cir. 2000) (quoting *Maryland Cas. Co. v. United States*, 135 Ct.Cl. 428, 431, 141 F.Supp. 900 (1956)). "Thus, when the government, under a mistake of fact or law, erroneously pays one party money that rightfully should have been paid to another, § 114(b) allows the government to seek reimbursement from the erroneously paid party." *Id.*; *see also United States v. Rush*, 804 F.2d 645, 647 (Fed.Cir. 1986).

[9] Defendant has, since then, resolved its dispute with Johnson, when, "on or about May 15, 2002, the United States issued a second payment in the amount of $93,297.50 to reimburse Johnson for the amounts due" on the contracts. Def.'s Mot. for Summ. J. at 3.

The burden falls upon the nonmoving party to produce evidence showing the a genuine issue of material fact, and an issue is genuine only if it might prompt a reasonable jury to resolve a factual matter in favor of the nonmoving party. *Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1562 (Fed. Cir. 1987). "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247-48 (emphasis original). "If the evidence [of the nonmoving party] is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249 - 250 (citations omitted).

The key challenge, therefore, in applying these standards, is to determine what evidence exists in the record to demonstrate to whom these checks belong. In support of its motion for summary judgment, defendant offers the declaration of Mark Barta, attorney for DFAS-CO, in which Mr. Barta states that the two checks were "mistakenly issued." Def.'s Mot. for Summ. J. App. at 74. Bank One offers neither affidavits nor any other evidence in opposition to this assertion, but rather merely objects to that characterization. Bank One does not meet the requirements under the burden necessary to defeat summary judgment in favor of defendant. Simply put, plaintiff may not under Rule 56 rest on its pleadings.

Furthermore, Bank One clearly recognized the novation of the contract and that its debtor Leisure Time was succeeded as a party to the contract by John Johnson, Inc. Thus, attached to a standard form accompanying the novation agreement was a financing statement which specifically terminated the security interest in Leisure Time held by Bank One, and was signed by Susan C. Rumer, Banking Officer, NBD Bank. Pl.'s 56(h)(2) Resp. to Def.'s Proposed Findings of Uncontroverted Fact at 5, ¶ 16; Def.'s Mot. for Summ. J. App. at 24-26; 73, ¶ 17. Consequently, Bank One's assignment of rights to payments under the contract was extinguished.

Indeed, the record in this case clearly shows that Bank One knew it was not entitled to payment under the contract. For example, the Federal Acquisition Regulations ("FAR"), under which the Defense Finance Accounting Service ("DFAS") operates, as stated above, required a separate "Release of Assignment" from Bank One in order for the system to recognize the novation agreement. This release contained language whereby Bank One acknowledged the previous release of its lien, and also stated that "payments due or to become due under the contract should be made to Johnson. *Id.* at 25. It was executed by Bank One, through its attorney, Charles Milne and was also signed by Richard H. Darcy, Jr., Vice President of Johnson. *Id.* And on March 10, 2000, the Defense Logistics Agency, DCMC–Detroit, sent an executed copy of the release to DFAS–Columbus ("DAFS–CO") for processing, and DFAS–Columbus acknowledged receipt of the release and so notified Bank One by a letter dated March 27, 2000. *Id.* One wonders why the checks were not returned.

Furthermore, as a death knell to plaintiff's cause, in its response to defendant's proposed findings of facts, Bank One *specifically stipulates* that the two checks paid to Bank One were "issued for invoices submitted by Johnson – specifically, Johnson invoice no. 41294 (for check no. 642-00,599,540) and Johnson invoice nos. 41340 and 41341 (for check no. 6422-00,599,655)." Pl.'s 56(h)(2) Resp. to Def.'s Proposed Findings of Uncontroverted Fact at 6, ¶ 24. It is, therefore, not in dispute that these two checks represented a payment by defendant authorized to Johnson, and not to Bank One. Even if Bank One's security interest in payments to Leisure Time was still intact at the

time of the payment, the legal authorization for the government's payment of those funds was not for payment to Leisure Time or to Bank One. There exists no evidence in the record indicating that Bank One was entitled to these two payments.

The record is uncontroverted that the payments were made in error and were thus unauthorized. It is beyond cavil that payment by the United States that is not legally authorized is contrary to both Article I, Section 9, Clause 7 of the Constitution (the Appropriations Clause), which provides that "[n]o money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law . . . ", and the Anti-Deficiency Act, 31 U.S.C. § 1341(a)(1)(A), which states that "[a]n officer or employee of the United States Government or of the District of Columbia government may not . . . make or authorize an expenditure or obligation exceeding an amount available in an appropriation or fund for the expenditure or obligation."

It is also well-settled that the United States Government has a right to recover funds mistakenly or erroneously paid. *United States v. Wurtz*, 303 U.S. 414, 416 (1938) ("The Government's right to recover funds, from a person who received them by mistake and without right, is not barred . . . . "). *See DiSilvestro v. United States*, 405 F.2d 150, 155 (2d Cir. 1968) ("It is, of course, well established that parties receiving monies from the Government under a mistake of fact or law are liable *ex aequo et bono* to refund them, and that no specific statutory authorization upon which to base a claimed right of set-off or an affirmative action for the recovery of these monies is necessary."). *See also Grand Trunk W. Ry. Co. v. United States*, 252 U.S. 112, 120-121, 40 S. Ct. 309, 64 L. Ed. 484 (1920); *Wisc. Cent. R.R. v. United States*, 164 U.S. 190 (1896); *American Financial Associates, Lt. v. United States*, 5 Cl. Ct. 761 (1984), *aff'd*, 755 F.2d 912 (Fed. Cir. 1985); *Fansteel Metallurgical Corp.*, 145 Ct. Cl. 496, 172 F. Supp. 268, 270 (1959).[10]

---

[10] This court's jurisdiction over defendant's counterclaim is predicated upon 28 U.S.C. § 2508:

> Upon the trial of any suit in the United States Court of Federal Claims in which any setoff, counterclaim, claim for damages, or other demand is set up on the part of the United States against any plaintiff making claim against the United States in said court, the court shall hear and determine such claim or demand both for and against the United States and plaintiff.
>
> If upon the whole case it finds that the plaintiff is indebted to the United States it shall render judgment to that effect, and such judgment shall be final and reviewable.
>
> The transcript of such judgment, filed in the clerk's office of any district court, shall be entered upon the records and shall be enforceable as other judgments.

28 U.S.C. § 2508 (2003). The counterclaim, predicated under the equitable doctrine of *ex aequo et bono*, or "money had and received," arises out of a theory of quasi contract or contract-implied-in law. *See Royal Indem. Co. v. United States*, 313 U.S. 289, 296, 61 S.Ct. 995, 85 L. Ed. 1361 (1941). While this court generally has no subject matter jurisdiction over a claim brought under such a theory, it does when brought as a counterclaim. *See* 28 U.S.C. 1491. *See also BLH, Inc. v. United States*, 13 Cl. Ct. 265, 275 (1987) ("Although [the Claims Court] does not generally have jurisdiction over implied-in-law contracts, an exception exists for counterclaims for money damages asserted by the government." (internal citation omitted)).

In response, plaintiff argues that it is not indebted to the United States, offering the "volunteer doctrine" as a defense. Under the volunteer doctrine, payments cannot be recovered if they were voluntarily made. Plaintiff cites two cases to support its volunteer doctrine argument: *United States v. Edmonston*, 181 U.S. 500, 510, 21 S. Ct. 718 (1901) ("this court has distinctly and constantly recognized the doctrine where there has been a voluntary payment of money, using that term in the customary legal sense, the money so paid cannot be recovered, and also that doctrine applies to cases in which one of the parties is the government and that money thus voluntarily paid to the government cannot be recovered.") and *Olympic Steamship Co. v. United States*, 165 F. Supp. 627, 631 (W.D. Wash. 1958) ("[there is] little room for doubt that the general rule that voluntary payment is not recoverable is applicable to transactions with the United States.").

These cited cases involve overpayments voluntarily made by a private party to the United States. In this circumstance, *Edmonston* and its progeny would apply the volunteer doctrine and prohibit recovery of the overpayments made *to* the United States. Thus, the facts of these cases are the very opposite of those of the instant matter here. The court doubts these cases stand for the proposition that the volunteer doctrine stands as a *de facto* constitutional amendment repealing the Appropriations Clause and vitiating the Anti-Deficiency Act. And plaintiff never responds to *United States v. Wurtz* and like cases recognizing a cause of action by the United States to recover mistaken payments. Indeed, plaintiff does not dispute the right of the United States, generally, to recover such payments.

Furthermore, for the volunteer doctrine to apply, the payments must have been voluntarily made. In an attempt to show that the payments were voluntary, and not mistaken or erroneous, Bank One advances a near specious legal argument based on two criminal cases: *United States v. Barket*, 530 F.2d 189 (8th Cir. 1976), and *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495 (1971).

In *Barket*, the Eighth Circuit held, *inter alia*, that the District Court had properly imputed the Justice Department's prior deferral of a defendant's prosecution as notice to a local federal prosecutor. *Barket*, 530 F.2d at 195. Bank One claims that in *Santobello*, "[t]he Supreme Court of the United States held that there was a responsibility on the part of an agency to communicate with itself." Pl.'s Mot. for Summ. J. Against the United States and Answer to the United States' Mot. for Summ. J. at 6. In *Santobello*,

> petitioner 'bargained' and negotiated for a particular plea in order to secure dismissal of more serious charges, but also on condition that no sentence recommendation would be made by the prosecutor. It is now conceded that the promise to abstain from a recommendation was made,

---

Jurisdiction over set-offs or demands by the government in this court is further provided by 28 U.S.C. § 1503, which states that "The United States Court of Federal Claims shall have jurisdiction to render judgment upon any set-off or demand by the United States against any plaintiff in such court." *See also Barrett Ref. Corp. v. United States*, 242 F.3d 1055, 1062 (Fed. Cir. 2001) (citing *Cont'l Mgmt., Inc. v. United States*, 208 Ct. Cl. 501, 527 F.2d 613, 616 n. 2 (1975) (stating that under § 1503, "the Government may set up a counterclaim even though . . . it states a claim of a type (e.g. tort) of which [the Court of Claims] would not have jurisdiction if sought to be maintained by a plaintiff") (citing *Cherry Cotton Mills, Inc. v. United States*, 327 U.S. 536, 105 Ct. Cl. 824, 66 S. Ct. 729, 90 L. Ed. 835 (1946))).

> and at this stage the prosecution is not in a good position to argue that its inadvertent breach of agreement is immaterial. *The staff lawyers in a prosecutor's office have the burden of 'letting the left hand know what the right hand is doing' or has done*.

*Santobello*, 404 U.S. at 262 (emphasis added).

Apparently, Bank One is arguing that because government officers had executed the novation and subsequent documents, according to which the payments would stop being made to Bank One and start being made to Johnson, those officers' knowledge of those documents should be imputed to all agencies of the United States, including the appropriate disbursement office. Bank One argues that because this knowledge is imputed, the payment was voluntary, and therefore not mistaken or erroneous.

Bank One's application of *Barket* and *Santobello* to the facts of the case is severely misplaced. These are criminal cases applying fundamental constitutional concepts of fairness in a criminal trial context. These cases do not in any way negate the requirement that payments made by the United States must be authorized and that the government may seek to recover mistaken payments as a matter of law. Payments by the government are not considered "voluntary" because of the knowledge of the agents making the payments, but because of the constitutionally proscribed appropriation and authorization that must accompany all government payments. *See Wisc. Cent. R.R. v. United States*, 164 U.S. 190 (1896).

As Supreme Court in *Wisc. Cent. R.R.* stated:

> As a general rule, and on grounds of public policy, the government cannot be bound by the action of its officers, who must be held to the performance of their duties within the strict limits of their legal authority, where, by misconstruction of the law under which they have assumed to act, unauthorized payments are made. The question is not presented as between the government and its officer, or between the officer and the recipient of such payments, but as between the government and the recipient, and is then a question whether the latter can be allowed to retain the fruits of action not authorized by law, resulting from an erroneous conclusion by the agent of the government as to the legal effect of the particular statutory law under or in reference to which he is proceeding.

*Id.* at 210 (citations omitted).

Finally, plaintiff's unlawful exaction claim must fail for the very same reason its argument to keep the checks fail: there is nothing in the record to support an allegation that any exaction is unlawful. "An illegal exaction under the Due Process Clause exists only if money has been 'improperly exacted or retained' by the government. *Casa de Cambio Comdiv*, 291 F.3d at 1363 (citing *United States v. Testan*, 424 U.S. 392, 401, 96 S. Ct. 948 (1976)). In order for the plaintiff in the case to prevail on summary judgment in its illegal exaction claim, it must show that there is no genuine issue of material fact and that the money that is being retained by the government in the offset has been and is being improperly exacted or retained.

It is well established, that the government has the right to initiate offsets against its debtors. *See United States v. Munsey Trust Co.*, 332 U.S. 234, 239 (1947); *see also* 31 U.S.C. §§ 9716 *et seq.* Because the United States has a right to offset its debtors, the offset against Bank One is only an illegal

exaction if Bank One is not a debtor to the United States in the amount of the offset. As a result of Bank One's refusal to return the mistakenly-paid checks, the government initiated the offsets here pursuant to 31 U.S.C. § 3711(a) and Volume 10, Chapter 18 of the DoD ("Department of Defense") Financial Management Regulation. There is no dispute here as to the procedures that must be followed to collect a debt owed to the United States, nor is there any dispute as to whether the government did follow those procedures.

## III. Conclusion

By the parties own stipulations, and the uncontroverted record, the checks in this case were paid on Johnson's invoices, and not in fulfillment of any debt owed to Bank One. Because the payments in this case were clearly made by mistake, defendant is entitled to recovery. The government's right to recover payments made by mistake is rooted both in the Constitution of the United States and in the Anti-Deficiency Act, and is well established in case law. This money belongs to the people and taxpayers of the United States.

For these reasons, defendant's motion for summary judgment is GRANTED and plaintiffs' cross-motion for summary judgment is DENIED. Judgment shall be entered by the clerk of the court in favor of defendant in the amount of $93,277, plus interest. Any remaining arguments or motions proffered by the parties are moot.

Costs are awarded to defendant as prevailing party.

**IT IS SO ORDERED.**

s/Lawrence J. Block
Lawrence J. Block
Judge